I went up a little bit higher than it does, I guess not. Good morning, may it please the court, Stanley Tate on behalf of the respondent, Rochelle A. Page. I'm sorry, the appellant, Rochelle A. Page. Good morning, Roberts. I think it's important to keep in context what this case is dealing with here. Chase Bank made a $30,000 loan to a woman who was a part-time college student, taking six credit hours, and they gave her this $30,000 loan for one semester of attendance. At the time, they didn't require a cosigner. She was making $10 an hour. So why make this loan? I imagine they made this loan because they're banking on it being held non-dischargeable in bankruptcy under one of the provisions that were allowed under 523A8. But here's the thing with that. This loan was a private loan, and if it's going to be accepted from discharge, it should be accepted from discharge under 523A8B, which says this loan has to be a qualified education loan. This loan definitely is not that. And the bankruptcy court below did not make a ruling towards that. They relied on an argument saying that this loan was made under a program funded by a non-profit. Now, what does the word funded mean? I tried to explain it to my wife, and I explained to her quite ordinarily. I said, look, if you fund a loan program by placing your monies into an account, you have thereby funded it. She said, that makes sense to me. Now, I explained to her the bankruptcy court's ruling. The bankruptcy court has said that a non-profit can fund a loan program simply by receiving the mail of a for-profit bank. The court said, hey, this non-profit was entitled to receive the mail, potentially in this case, because we don't know because the facts haven't got there on summary judgment whether or not mail was actually received. But the bankruptcy court said, they're acting in a plenary capacity in the program and have therefore meaningfully participated in the program and have thereby funded the loan program by serving as a post office box. That's just wrong on the ruling and wrong on the law. The law itself stems from N. Ray Hammerstrom, a case from the late 80s, that first interpreted what the word funded mean. Now, the word funded, in that court's opinion, was where the non-profit organization did everything but make the loan itself. They simply reduced the role of the for-profit bank to an agent of the non-profit entity. And that makes sense in that case. How do you get that interpretation out of the language of the statute? I understand you're advocating that standard. To me, there's no basis for it in the statute. And I don't believe that you have to go there. I believe that we can simply rely on the plain meaning of the statute itself. Congress knew how to use the word guaranteed when they wanted to use the word guaranteed. They used that in the previous paragraph. I'm sorry, the previous clause, the first clause. When we're talking about funded, N. Ray Hammerstrom was faced with a position where they had to interpret funded, because on the plain meaning of the statute itself, it would have led to an absurd result, because the non-profit entity did not make the loan itself, but it did everything else. It marketed it. It designed a loan application. It bought the loan as soon as it was made. That's where they end up with funded in that situation, interpreting it to mean meaningful participation. Over the years, bankruptcy courts have bastardized that case to the point where they just say, hey, there's a guarantee involved by this non-profit entity, and therefore that guarantee means the same thing as funded. I can get that argument, I guess, even though by plain meaning, Congress knew how to use the word guaranteed when it wanted to use that word. The cases pretty much say that, do they not, that a guarantee is sufficient to be funded? I totally agree with you that there's a string of cases after Hammerstrom. But those cases misinterpret Hammerstrom. Hammerstrom had a guarantor involved in that transaction. There was two non-profits involved, the non-profit guarantor and the non-profit entity, that was forbade from making loans under state law. The court did not pay attention at all to the non-profit guarantor's status. Instead, it relied on the non-profit bank who bought the loan immediately after it was made. They did everything but make the loan. Over the years, courts have looked at that and said, oh, guaranteed is enough. But I refer back to N. Ray Taratoska, which was overruled on appeal, which looked at the plain meaning statute and said, come on now, we have to be realistic about what's going on here. Funded means to deposit funds or cause funds to be deposited. In this case, it would- Haven't most of the courts rejected that standard? Yes. I agree with you, but just because they've been rejected doesn't mean that that position is correct. And especially on this case here where we haven't had any evidence where, like those cases, the guarantee was made to- Let me back up. In those other cases, the courts looked at the guarantor's role and said, hey, there's evidence that this loan program would not have been funded but for the guarantee of the non-profit. That's not what we had here. We had no evidence whatsoever that Chase made this loan conditional based on the guarantee of Terry. That wasn't proved up at all. What was proved is that Chase made the loan, Chase marketed the loan directly to her, Chase approved the loan applications, and Chase directed Rochelle to send the loan to a certain location, either by fax or by mail. The non-profit's role whatsoever, what was it reduced to? Meaningful participation for the bankruptcy court to say they had a plenary capacity by receiving the mail. I don't know how they get there to get funded. That's the basis of the argument, Your Honor. On summary judgment, I don't know how we get to this part where we can say funded is the same as you receive mail, Your Honor. Now, the bankruptcy court, there was an attempt to inject a guarantee issue into the case, correct? Both parties argued whether or not guaranteed meant the same thing as funded. The court chose to ignore that argument and instead went through the documents attached to the motion for summary judgment of National Collegiate Trust and found evidence to say that, yes, the mail was supposed to be deposited, I'm sorry, pre-approved applications were supposed to be sent to Terry if by mail, and therefore that's a plenary capacity, and therefore they have funded the loan program. No, I'm just trying to make sure that we understand accurately the status of the record with respect to the question of whether or not the program or the loan was or was not guaranteed. If I recall correctly, your opponent tried to put that in by way of an affidavit to which you objected. The trial court did not rule on that motion, denied it as moot, saying that it wasn't relying upon that issue in making its ruling. Is that where the record stands? That is exactly where the record stands, Your Honor, because the court instead looked at the evidence attached to the affidavit and said that the nonprofit has meaningfully participated in the loan program simply by receiving the mail. That was the only piece of evidence they relied on in reaching that ruling, that they have therefore funded it because they're equating that meaningful participation with funded. So the guarantee wasn't at issue in the case below, Your Honor. All right. Just one other question. You argued the educational loan question in your briefs. You really didn't touch on it today. Are you abandoning that argument? No, I'm not abandoning it. It's just as Judge Saladino asked earlier. Yeah, we switched on you in the meeting. As he mentioned earlier, what's your strongest argument? So I stay with my strongest argument. The educational argument itself. I contend that Congress, through successive amendments of the statute, when they first added in, they were seeking to protect Department of Treasury funds through government lending programs. It wasn't until 2005 that loans made outside of the government lending program were protected under the statute. But then those loans had to have the hallmarks of the educational loans that Congress had sought to protect in the amendments from 1979, 1990, and so forth. The court could go into his room and say it is an educational loan. We hadn't argued that at all. Had that been an issue before the court, yes, I would have argued that below as well. And on brief, I just mentioned it that, hey, this wasn't an issue at all. We didn't argue about this. But if we are going to raise it and say this is an educational loan, then we need to look at what the statute has actually said. That a for-profit loan is protected under 523.88, but only if it's a qualified educational loan, which means that it's for the cost of attendance, which also means that it needs to have the hallmarks of the loans made by the federal government to borrowers. That wasn't the case here. If there's nothing further, I reserve the rest of my time for rebuttal. Any other questions? All right. Thank you, Your Honors. Thank you. Good morning, Your Honor. May it please the court. My name is R. James DeRose III, and I am for the Apelli National Collegiate Student Loan Trust 2006-1. My colleague is propounding a radical reimagining of the laws that exist and a radical reimagining of 523.88. What is striking about both the briefing that he submitted and his presentation today is that it stays away completely from the language of the loan documents and the evidence that was put before Judge Rendlin. And when you look at the language of the loan documents, it becomes abundantly clear that this was an educational loan that was made under a program that was funded in part, which is an important phrase, in part, by a nonprofit. And we see in the credit agreement that the borrower acknowledged that the loans would be used only for educational purposes. We see that she agreed to immediately repay any funds not used for educational expenses. That loan ties its repayment to attendance at the school that she designated in her loan application. It requires proof of enrollment in the school for the period in which the loan was requested, and it required the borrower to notify the lender if there was any change in her enrollment status. It's an educational loan. The borrower admits that it was part of a program, so we'll put that to the side. On page 5 of her brief, she admits that it's a program, so we'll put that to the side. The credit agreement, though, also contains an acknowledgment by Ms. Page that the loan was non-dischargeable under 523A-8 and that it was subject to a guarantee by Terry, which she acknowledged was a nonprofit. The credit agreement also contemplates... Was that in the record?  I understand the credit agreement is, but didn't the bankruptcy judge specifically decline to rule on that question, so he did not make a finding? He did not make a finding that it was guaranteed by a nonprofit. The evidence was in front of him in the record. He noted and cited to the credit agreement for other purposes, so we know that he was familiar with it and was relying on it. The credit agreement also contemplates the sale of the loan to Terry in Provision D-3 and requires and authorizes the lender to release information to Terry relating to the borrower, and the instructions requires that any application made through the mails or, I guess, overnight delivery be sent to Terry. And, Judge Saldino, you're correct. That is what Judge Renlund pointed to to find that the nonprofit exercised a plenary capacity and was funding the program in part. Well, I'm just wondering if our hands are tied on his decision to not make a finding regarding whether or not the loan was guaranteed by a nonprofit, despite the fact that the loan documents say it was. Well, we're an appellate court. Yes. So we're not really in a position to make that finding if he declined to do so, are we? As the Eighth Circuit has reminded us on more than one occasion. Well, in this instance, Your Honors, I think that the case law will allow you to do so because there are instances where the courts, including one in the Western District of Missouri, have found that language similar to what's contained in our loan agreement got the court to the determination that the guarantee was in place. Which case was that? I would direct the courts to- Was it Sears? It was Sears. That's Judge Venters from 2008. I would direct the court to In Re Jean Baptiste, which is a 2018 case from the Eastern District of New York Bankruptcy Court. I'm not entirely sure how this case came about in the Kentucky Court of Appeals, but Ratchford v. National Collegiate Student Loan Trust, 2005-3. And I can give you the site if you want that. 2018 Westlaw 3957100. Can you give it to me again? Yeah. Ratchford v. National Collegiate Student Loan Trust, 2005-3. 2018 Westlaw 3957100. But those first two cases you cited, you said a Judge Venters case. Yes, that's In Re Sears 393BR678, Bankruptcy Western District 2008. Right. And the New York case was also a bankruptcy level case. Yep, 584BR578. So those don't really go to the issue of- They do. They're instances where the court was looking to the documentation alone to determine that. The bankruptcy court was. Right. But this bankruptcy court chose not to do so. Right. But your question was whether or not- So I'm wondering where our- Well, your question was whether or not you can get to that question. Right. This is a motion for summary judgment. We're on de novo review. I would think that if the bankruptcy court could look to that documentation- But you're asking us to make a factual finding that the trial court did not make. Well, I mean I'm not asking you to make a factual finding. What I'm saying is that the bankruptcy court, I think, was correct in finding that Terry played a meaningful enough role to find that he guaranteed by accepting the documentation. How so? How does the record support a finding of anything other than there was an address and a PO box to which documents were to be sent that belonged to Terry? Well, it sets the condition for how you make the application for the loan. I mean it is serving the gatekeeping. Terry is serving some gatekeeping function. We don't know what that is, though, do we? We don't know the exact parameters of what it is, but we know that it does exist. And then taken in the context of the language of the rest of the credit agreement, we see that it is playing a pretty broad role and is satisfying requirements that have been found to constitute a guarantee in other instances. For example, Your Honor, Judge Dowd, in the Kikinia case, you found that so long as Terry took some of the risk of nonpayment, it was a guarantee. And we see that Terry is- Yeah, I said that a guarantee is enough. Right. There's no fact finding of a guarantee here. There's no finding of a guarantee. In court, the bankruptcy court specifically declined to make that finding. Right. The only finding was the receipt by Terry. Yes. And the bankruptcy court did not go into any more facts than simply the receipt. No. Though there's the In re Merchant in the Sixth Circuit. There's an instance where the court found that participation was sufficient to constitute funding where a nonprofit processed and submitted the application to the lender. What's the standard in the Eighth Circuit? There is no clear standard in the Eighth Circuit. Okay. I mean, this is- The standard in the Fifth Circuit, though, and the Seventh Circuit, which the In re Sokolik in the Seventh Circuit and In re Murphy in the Fifth Circuit, is that the court's meant to look to the documents. And so what are you advocating the standard should be here? Well, I'm advocating in this instance that the standard is that the documentation is sufficient, that that should satisfy the requirement. I mean, the standard that I'm advocating is that I'm not looking to change, and I don't think we're looking to change what is found to be a guarantee. We think that the court is correct. Judge Dow, we agree wholeheartedly with your decision in Kenya that that falls completely in line with what every other court is doing. But what I'm advocating for is that the terms of the documents in this instance should be sufficient to establish that. And they do. The guarantee. The guarantee, yes. And if this is what I'm hearing is that- But the trial court specifically didn't go there. So let's look at the other evidence. And tell me, is the inference that the judge made, the finding that he made about a plenary role that Terry had, an appropriate inference on a motion for summary judgment? Yes. He was confronted with- Is one supposed to draw inferences against the moving party? I don't think that he drew an inference against the moving party. He looked at the evidence weighted and saw what it determined. I mean, he doesn't have to turn a blind eye to something that's in front of him. He saw that Terry was receiving every document that came in through the regular mail or overnight and determined that this is the gatekeeper for this program. I mean, it's administering the program at that point. But you've just made a leap from receiving the documents to administering the program. Well, I mean, receiving- The receipt of the documents. That's true, but there has to be some action that's taken place between receiving the documents and the loan being issued. But we don't have that here, do we? We don't. But one other point that I'd like to make, because I hear that there's concerns about the findings of fact that have been made. Were not made, as the case may be. Point taken. There is documentation that this court can take judicial notice of that demonstrates that Terry absolutely funded this program. And there are SEC filings that were made by First Marblehead in 2006, their annual report. And 2006 is the operative year because that is the year that this loan was issued. And in those securities and exchange commission filings, there's a long discussion about First Marblehead's role in organizing these programs. It specifically states that it plays a role in organizing the Bank One program, which is the one that is at issue here, and admittedly at issue here. And then it gives a long exegesis on Terry's role in administering these loans. So I would, if there are concerns, I would point to that as something that- So you're saying that this court can take judicial notice of some kind of fact and make a fact finding? Well, it wouldn't be making a- well, yes. Yes, it would. Yes. Yes, I am saying that. And- Draw your next argument. I would also point the court to- back to- and this touches on the educational loan issue. That what happened here is Ms. Page- she promised that this would only be used for educational loans. And she promised that she would repay any funds not used for educational expenses. Now, for the first time in her appellate brief on page seven, she's saying, oh, well, I didn't take out this loan for educational purposes. They've now implicated the issues of 523A2. She's coming before the court and she's saying, hey, I made misrepresentations to the lender to obtain this money. That's something that I think this court should bear in mind if they're considering a remand for fact finding. We're going to end up with the same result. A little too late for A2, isn't it? I mean, it's- the admission that she took out this loan was not made until April of 2018 in her opening appellate brief. I mean, you know, we've been operating under the assumption that this was a good student loan that had been made and we had a counterparty who was acting in good faith. I mean, it wasn't raised until after we were before Judge Renlund. Is the decision below regarding what standards should be applied and whether it was met in this case consistent with the admonition that exceptions to discharge are to be construed narrowly? Oh. Yes. It certainly was. And I would direct this court to In re Sears on that point again where Judge Venter said, to utter his contention that the loan in question was not obtained for educational purposes wholly without merit, in light of her acknowledgments that are the same as that we have here. I would also direct the court to In re Sokolick, 7th Circuit, 2011, which seems to be the most recent case on this. And there, the 7th Circuit adopted the 5th Circuit's approach in Ray Murphy and decided to only use the approach that was most consistent with the language of 523 A8 A1, and that is that you look to the terms of the language. The judge just looked at the language of the credit agreement and then looked at the language of 523 A8 A1 and applied it. He did not go off on a tangent in any way. His decision was completely in line with every other decision that we've seen in all the research that we've done on this. And it's quite telling that my adversary is left to cite cases like In re Taratusca that were overruled by the district court on precisely the issue that he's citing them for, which Terry guarantees. So I have nothing further. If they're happy to answer any other questions, otherwise I cede my time. Thank you. Thank you. Your Honor, starting with this last part, that the decision of Judge Renland is in line with every other case. That's just a genuine statement. This case is outside the bounds of those other cases because all of those other cases, starting with In re O'Brien, equated guaranteed with funded. This is the only case thus far that has ever looked at this one singular act of receiving mail and saying, therefore, by receiving mail, they act in a plenary capacity. And they, therefore, meaningfully participate in the funding. Yes, Your Honor. Sorry to change gears on you here, but let's go back to the loan document. As counsel clearly indicated, shows that or states that Terry, a nonprofit, guaranteed this obligation. Is that really an issue? As I pointed out below was that there was no evidence put forth where Rochelle could testify to the accuracy of those statements inside the contract. Just because something is in a contract doesn't mean that it's actually true. I can agree that I'm the queen of England. That doesn't mean that I'm the queen of England in a contract. So there needs to be some evidence put forth to show that there actually was a guarantee. There was no evidence put forth. The only evidence that there was put forth on behalf of National Collegiate was that, and this wasn't even put forth. It was just attached to the affidavit. The court went and found it and said they received mail. Everything else was pointed out as an uncontested fact was that Chase marketed the loan directly to her. Chase designed the loan program. Chase designed the loan application. Chase made the loan to her. Chase directed her to submit the loan documents either by fax or by mail. There is no evidence that any documents were actually received under the loan program by mail, by tier. So we don't even know if they have a role whatsoever. We just know that it's in that document, but there was no other evidence put forth to say what the role actually was. And this is the only case in a string of cases, starting with N. Ray O'Brien, that has ever held the standard to be that low. Well, let me ask you this. So let's say you get what you want, and that is a reversal, and it goes back to Judge Renlund, and they put on evidence that was missing, such as it was guaranteed by Terry that Terry's a non-profit. Terry had this role in the program. Terry was independently involved in the program. Evidence that I suspect exists somewhere. They'll have to find someone to testify to it because Terry's gone. Okay. Well, I understand Terry's gone. That doesn't mean the evidence isn't there. I completely agree with you, Judge. Now what? Now what? Yeah. As Judge Dowd pointed out, you know, you never just lose your space just while you're thinking of a thought. All the time. All the time, right? The question is, what we're getting to is, like, are we at the same space? And I think we have to go back and argue whether or not, you asked me earlier, do we have to look beyond the statute? The statute plainly uses the word guaranteed in the first clause of Roman at I. Then it uses the word funded in the second clause. And so we have to have an argument about what does funded mean? Now I understand you have an opinion out there that says guaranteed is enough for it to fund. I think we have to have that argument here below because there is no precedence in the Eighth Circuit for that. And you're saying that argument wasn't part of this case so far? The argument was made by both parties below, but the judge chose to ignore that argument whatsoever. He sidestepped it. Both parties focused their argument on the guarantee, and it was well briefed below. However, the judge chose to sidestep it and relied on this singular piece of evidence that we're not even sure what that evidence actually is other than it just says they're supposed to receive mail. But maybe all loan applications were sent by fax. That's an inference that could be drawn in my client's favor. But the inference wasn't drawn. The inference instead was drawn that Terry played a plenary capacity in a loan program. I just don't know how we get there based on the evidence, especially when we have countervailing facts that say that Chase did everything in a loan program, much like what the case cited by counsel here with N. Ray Sears. That's what N. Ray Sears dealt with. The nonprofit did everything. They serviced a loan program. They made the loan. They did everything but make the loan. I apologize. We don't have any facts here, though, do we, to tell us exactly what Terry did? We have no facts. You keep arguing that Terry simply was a drop box, but the facts aren't here to tell us what Terry did and if, in fact, Terry didn't guarantee the loan. We have no evidence whatsoever of that. All we have is just a statement that the court chose to cherry pick from the evidence attached to the affidavit and saying that they received mail. That's it. All these other cases with N. Ray O'Brien, N. Ray Sears, going down the list, N. Ray Merchant, they all rely on facts that were presented. For instance, an affidavit from the bank saying we would not have made this loan but for Terry's guarantee. We don't have that here. And that was pointed out on brief at the Pell Level and also below as well. I want to make sure I understand precisely what happened below and what your position is on the question of the guarantee. You don't concede that it was guaranteed by Terry. Do not concede that whatsoever, Your Honor. They filed a motion request to have an affidavit come in that alleged that you objected to it. What was the nature of your objection? Striking to the nature there, you could say that the loan program was funded by Terry. The custodian records was a third party, TSI in this case. And I struck that particular paragraph instead of striking the whole thing. And I struck it just saying there's no evidence whatsoever that he has personal knowledge to make this statement. The judge chose to sidestep that as well and said, Render, there's moot in saying I'm deciding on this one singular fact. And didn't address the fact that every other fact was saying that Chase did everything for the loan program. And that's where we're at. Did the parties argue in their briefs below this question about whether a guarantee alone was sufficient? So both parties did address that in their briefs below, Your Honor. However, the judge again chose to sidestep that and said I'll rule on this singular issue. Your Honor, I see that my time is coming to a close. Are there any other questions at this time? I don't believe so.  Thank you, Your Honor. Thank you. Court will be in recess until further notice.